LENTOMYYNTI OY, a Finnish Corporation, individually, Gan Incendie Accidents, Compagnie D'Assurances Maritimes, Aeriennes Et Terrestres S.A., Assurances Generales De France Iart, Per Westminster Aviation Insurance Group, and all other insurance companies signatory to Certificate No. 10114FF, N.C. Haydon, individually and as representative of all Underwriters at Lloyd's signatory to Certificate No. 10114FF, as subrogee of Lentomyynti Oy, Plaintiffs–Appellants,

v.

MEDIVAC, INCORPORATED and Larry W. Whipple, Defendants–Appellees.

Nos. 92–2150 & 93–1371.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 21, 1993.

Decided July 1, 1993.

John B. Austin (argued), Robert C. Von Ohlen, Jr., Kevin Murphy, Adler, Kaplan &

Begy, Chicago, IL, Thomas J. Brunner, Jr., Paul J. Peralta, Baker & Daniels, South Bend, IN, for plaintiffs-appellants.

John S. Hoff, Brandt R. Madsen, Chicago, IL, for defendants-appellees.

Before COFFEY and KANNE, Circuit Judges, and HOLDERMAN, District Judge.*

KANNE, Circuit Judge.

This consolidated appeal challenges both the judgment on the merits and the post-judgment award of costs. Having concluded that we have jurisdiction over the appeal on the merits, we affirm the judgment of the district court entered in favor of the defendants. However, we remand the case for a new costs award.

## I. Jurisdiction

■ The defendants contend that because the plaintiffs' appeal of the merits is untimely, we lack jurisdiction to hear it.[1] We do not have jurisdiction to hear an appeal unless an appellant files a timely notice of appeal. *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Wisconsin,* 957 F.2d 515, 517 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 91, 121 L.Ed.2d 53 (1992); *Varhol v. National R.R. Passenger Corp.,* 909 F.2d 1557, 1561 (7th Cir.1990). Federal Rule of Appellate Procedure 4(a)(4) states that a notice of appeal filed before the district court disposes of a Federal Rule of Civil Procedure 59(e) motion "shall have no effect." Therefore, if a valid Rule 59(e) motion was pending before the district court when this appeal was filed, we do not have jurisdiction over the plaintiffs' appeal.

*Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). According to the defendants, this is exactly the situation before us.

Judgment for the defendants, based on a jury verdict, was entered on April 16, 1992.[2] On April 27, 1992, the defendants filed a "Motion to Amend Judgment."[3] In this document, the defendants moved the district court, pursuant to Rule 59(e), to alter the April 16th judgment to include, "in addition to those awarded under 54(d), any and all costs, expenses, and fees allowable under FRCP Rule 68."[4] This motion was still pending when the plaintiffs filed their notice of appeal to this court on May 14, 1992.

■ The events described require us to decide whether a post-judgment motion to recover Rule 68 costs is properly considered a Rule 59(e) motion. We start with the premise that merely titling a document a Rule 59(e) motion does not make it one. *Lac Du Flambeau Indians,* 957 F.2d at 517; *Charles v. Daley,* 799 F.2d 343 (7th Cir.1986). Genuine Rule 59(e) motions are used to request "reconsideration of matters properly encompassed in a decision on the merits." *White v. New Hampshire Dept. of Employment Security,* 455 U.S. 445, 451, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982). Thus, we must examine the request made in the document and decide whether its disposition would truly alter the merits of the judgment or whether it addresses a matter wholly collateral to the judgment on the merits.

While the Supreme Court has not decided whether a motion for Rule 68 costs is a valid Rule 59(e) motion, other cases by the Court

---

* The Honorable James F. Holderman, District Judge for the Northern District of Illinois, is sitting by designation.

1. Our jurisdiction to hear the appellants' appeal regarding costs is not contested.

2. Specifically, the judgment stated that the plaintiffs "take nothing, that the action be dismissed on the merits as to the defendants ... and that the defendants recover of the plaintiff its costs of action."

3. Because April 26, 1992 was a Sunday, the motion was filed within 10 days as Rule 59 requires.

4. Federal Rule of Civil Procedure 68 provides:

   At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued.... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

provide significant guidance. In *Buchanan v. Stanships, Inc.*, 485 U.S. 265, 108 S.Ct. 1130, 99 L.Ed.2d 289 (1988), judgment for the defendants was entered following a bench trial; the judgment made no mention of costs. The following day the plaintiffs filed a notice of appeal. Two days later, the defendants filed a document asking that the judgment be changed to reflect that the defendants were " 'entitled to recover taxable costs' ": the document was titled "Motion to Alter or Amend Judgment" and specifically referred to Rule 59(e). *Id.* at 266, 108 S.Ct. at 1130–31. The Court held that the motion was a Rule 54(d) motion for costs, not a Rule 59(e) motion, because "a request for costs raises issues wholly collateral to the judgment in the main cause of action, issues to which Rule 59(e) was not intended to apply." *Id.* at 268–69, 108 S.Ct. at 1132.

In *White v. New Hampshire Department of Employment Security*, the Court held that post-judgment motions for attorneys' fees were not proper Rule 59(e) motions because they raised an issue collateral to a decision on the merits of a case. 455 U.S. at 451, 102 S.Ct. at 1166. In a related case, the Court held that a decision was final under 28 U.S.C. § 1291 even though an unresolved issue of attorneys' fees remained. *Budinich v. Becton Dickinson and Co.*, 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988). The *Budinich* court specifically noted that questions of attorneys' fees should not delay an appeal because they *indisputedly* are not part of the case's merits, but instead are the equivalent of costs "which are not generally treated as part of the merits judgment." *Id.* at 200, 108 S.Ct. at 1721.

Most recently, the Court reaffirmed and distinguished the foregoing cases in *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989). In *Osterneck*, the Court held that motions for prejudgment interest were proper Rule 59(e) motions because unlike "motions for costs, a motion for discretionary prejudgment interest does not 'rais[e] issues wholly collateral

to the judgment in the main cause of action.' " *Id.* at 175, 109 S.Ct. at 991 (quoting *Buchanan*, 485 U.S. at 268, 108 S.Ct. at 1132). The Court explained that because district courts are required to examine matters involved in the underlying action in order to decide prejudgment interest, it is appropriate to characterize such motions as Rule 59(e) motions. *Id.*, 489 U.S. at 176, 109 S.Ct. at 991.

In addition to Supreme Court precedent, our research reveals that two other circuit courts have addressed the precise issue before us, each reaching a different conclusion. In *Munden v. Ultra–Alaska Associates*, 849 F.2d 383, 385 (9th Cir.1988), the defendants filed a motion entitled "Motion to Amend Form of Judgment" in which they asked the court to apply Rule 68 and relieve them of the judgment order to pay the plaintiff's costs. Despite the fact that the defendants did not even mention Rule 59(e) in their original motion, the Ninth Circuit held that the document was a proper Rule 59(e) motion, and thus the plaintiff's notice of appeal was premature. *Id.* The court reasoned:

> The district judge deliberated over a new issue raised by the motion (whether to include post-offer interest in determining if the offer of judgment exceeded [the plaintiff's] actual recovery). The defendant's motion sought substantive, not merely ministerial or clerical, relief.

*Id.* at 387. The court did not discuss any of the relevant Supreme Court cases.

In contrast, the Third Circuit held that a defendant's motion for costs under Rule 68 was not a proper Rule 59(e) motion. *Fincher v. Keller Industries, Inc.*, 905 F.2d 691 (3rd Cir.1990). The *Fincher* court reviewed much of the Supreme Court precedent outlined above and concluded that a motion for Rule 68 costs was "wholly collateral to the judgment on the merits." *Id.* at 693. We find the Third Circuit's analysis more persuasive and more in line with recent Supreme Court precedent.[5]

---

5. Further support for our holding is found in *Crossman v. Maccoccio*, 792 F.2d 1 (1st Cir. 1986). That case presented the court with the question of whether a judgment entered on a jury verdict was final and appealable despite the fact

that the judgment did not address the issue of the defendant's Rule 68 claims for costs and attorney's fees. *Id.* at 2. The First Circuit concluded that the judgment was final stating, "the Rule 68 costs cannot be considered an 'integral part' of

The defendants suggest a few ways to avoid the seemingly inevitable outcome under these cases. First, the defendants point out that *Buchanan* involved costs under Rule 54(d) and that their motion cannot be said to involve 54(d) costs because those had already been awarded in the original April 16th judgment. The defendants are correct as a matter of fact; however, this only explains why we are even discussing the issue instead of simply holding that we have jurisdiction and citing *Buchanan.* This "argument" does not speak to why motions for Rule 68 costs should be treated any differently from motions for Rule 54(d) costs. In addition, the *Fincher* court specifically rejected this attempt to distinguish *Buchanan.* 905 F.2d at 693.

Second, the defendants direct us to *Charles,* which they claim stands for two propositions: (1) a motion to clarify judgment may qualify as a proper Rule 59(e) motion; and (2) all substantive motions filed within 10 days of judgment are presumed to be Rule 59(e) motions. 799 F.2d at 347. Again, the defendants' assertions are essentially correct, though not particularly helpful to their position. In *Charles,* we concluded that the party's motion to clarify was "substantive" because it requested the court to alter the *parties* affected by the judgment. *Id.* Costs simply were not at issue in *Charles.* Citing *Charles* merely begs the question of whether we should treat Rule 68 costs motions as "substantive."

■ Ignoring the clear distinction between the instant case and *Charles,* the defendants appear to argue that their motion for Rule 68 costs is "substantive" for two reasons: its disposition requires consideration of substantive matters, such as the reasonableness of their settlement offers, and its disposition could have a significant effect because a substantial amount of money is at stake. The defendants' latter argument is meritless.

the underlying cause of action ... [r]ather, the fees were entirely collateral to the main litigation." *Id.* at 3.

6. We note that the procedural history of *Delta Air Lines* itself supports our holding. The only issue addressed in *Delta Air Lines* was whether Rule 68 costs were appropriately awarded. That was

Whether a motion is "substantive" for Rule 59(e) purposes has nothing to do with whether it involves a "substantial" amount of money. Rather, we look to whether the motion is related to the merits of the case or a collateral matter. *Buchanan,* 485 U.S. at 268–69, 108 S.Ct. at 1132.

■ The defendants' former argument also must fail in light of *Delta Air Lines, Inc. v. August,* 450 U.S. 346, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981). In *Delta Air Lines,* the Court held that Rule 68 did not apply to cases in which the plaintiff refused a settlement offer and subsequently lost at trial. *Id.* at 352, 101 S.Ct. at 1150. In reaching its holding, the Court expressly rejected the argument that Rule 68 required "reasonable offers":

> [T]he plain language of the Rule makes it unnecessary to read a reasonableness requirement into the Rule.

*Id.* at 355, 101 S.Ct. at 1151–52. This language makes it clear that in deciding whether to award Rule 68 costs, the district court is not required to examine the reasonableness of defense settlement offers. Thus we do not believe that a disposition of a motion for Rule 68 costs necessitates an inquiry into the merits of the case by the district court.[6]

Based on the foregoing analysis, we hold that a motion for Rule 68 costs is not substantive for Rule 59(e) purposes. Because the defendants' motion is not a proper Rule 59(e) motion, the plaintiffs' notice of appeal was timely filed, giving us jurisdiction over the appeal of the judgment on the merits.

## II. Factual Background

In 1988, a plane crash killed pilot Harry Rhule and totally destroyed a Lake Renegade 250 amphibian aircraft owned by the plaintiff, Lentomyynti Oy. Lentomyynti Oy and various subrogated insurers brought this suit against Medivac, Inc., and its Director of

so because the decision on the merits in that case—a Title VII claim—had already been affirmed pursuant to an earlier and *separate* appeal. *See August v. Delta Air Lines, Inc.,* 600 F.2d 699, 700 (7th Cir.1979), *aff'd on other grounds,* 450 U.S. 346, 101 S.Ct. 1146, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981).

Maintenance, Larry Whipple, seeking to recover damages for the loss of the airplane. Medivac is a fixed base operator in Goshen, Indiana, which services aircraft and, *inter alia*, equips airplanes with extra fuel tanks so that they may be flown across the ocean. The plaintiffs' complaint alleged that Whipple negligently installed a "ferry fuel system" designed to permit the Lake Renegade 250 to make a transatlantic crossing. The complaint also included a strict liability count which alleged the "ferry fuel system" was latently defective and that the defects were the proximate cause of the plane crash.

Specifically, the plaintiffs' theory of the case was that the faulty fuel system starved the engine of fuel and caused fumes to leak into the cabin, incapacitating pilot Rhule. In the defendants' view, the crash was caused by pilot Rhule's negligence alone, not by a defective or negligently installed fuel system. Given the competing theories of the case, Rhule's conduct during the fatal flight was an important issue at trial. Expert witness testimony evaluating Rhule's behavior was presented to the jury. This appeal reaches us because the plaintiffs are disgruntled with the district court's handling of matters relating to its expert witness, Luke Smith. To address these matters, a rather extensive trial history is required.

In preparation for trial, the plaintiffs retained pilot expert witness, Luke Smith. Pursuant to Federal Rule of Civil Procedure 26(b)(4), the plaintiffs filed a statement in which Smith opined that fuel vapors incapacitated, Rhule rendering him incapable of landing the plane. Smith also stated that the engine was starved of fuel due to Medivac's improper fuel system installation. Apparently, Smith's stronger conviction was that the plane crashed due primarily to Rhule's incapacitation. However, on April 3, 1992, the district court granted partial summary judgment for Medivac on the issue of incapacitation because Smith was not competent to testify that Rhule had been incapacitated by fuel fumes, and because the plaintiffs did not have a medical expert available to provide such testimony.

On April 7, 1992, Medivac filed a "Motion in Limine to Bar Admission of Evidence of the Cause of the Pilot's Alleged Incapacitation." The district judge reserved a ruling on the motion but reminded the plaintiffs that it had already ruled, as a matter of law, on the incapacitation issue, and that they should avoid the issue. Medivac responded that it would like its expert to testify that the erratic flight path was consistent with pilot incapacitation but without discussing the cause of the incapacitation. The district judge warned the defendants that if they "opened the door" regarding the cause of the incapacitation, then he would allow the plaintiffs to discuss the issue.

The case went to trial on April 9, 1992. The plaintiffs did not call Luke Smith during their case-in-chief. Instead mechanical expert, Richard Murray, gave testimony concerning the plane engine's malfunction and the fuel system, and four eyewitnesses to the crash also described the engine's apparent malfunction. At the close of the plaintiffs' case, Medivac moved for a directed verdict on both the negligence and strict liability counts. Medivac argued that because the plaintiffs had failed to put on a pilot expert, there was no evidence that Medivac's negligence had caused the engine failure. The district judge granted a directed verdict in favor of Medivac on the negligence count, but not on the strict liability count.

Following the district court's ruling, Medivac presented its case, the focus of which was pilot expert, Jack Eggspuehler. Eggspuehler testified that he believed the crash was caused by the pilot's negligent operation of the aircraft; specifically, Eggspuehler stated that the plane could have been landed safely but for Rhule's errors. In addition to Eggspuehler's testimony, Medivac also sought to read portions of Luke Smith's deposition during its case-in-chief. The plaintiffs filed a motion in limine to prevent Medivac from introducing those portions of the deposition that dealt with incapacitation and to prevent Medivac from reading portions of the deposition testimony out of context. The district court did not specifically rule on these issues, but it did permit Medivac to read a redacted version of Smith's deposition to the jury—with a warning that "opening the door" on

the incapacitation issue would have consequences, potentially including a mistrial.

During Medivac's presentation of Smith's deposition, the plaintiffs made repeated objections and moved for a mistrial, claiming that by reading half questions and half answers Medivac had improperly misled and confused the jury. In response, the district judge, relying on the Rule of Completeness embodied in Federal Rule of Evidence 106, permitted the plaintiffs to read into evidence all the additional portions of Smith's deposition that they desired.

After Medivac concluded its case, the plaintiffs called Smith as a rebuttal witness. At that time, the plaintiffs filed a second Rule 26 statement containing Smith's opinions. On direct examination, Smith testified that, contrary to Eggspuehler's opinion, engine failure, not pilot error, caused the crash. Smith also stated that it was impossible for a pilot to have made the emergency landing suggested by Eggspuehler without severely damaging or destroying the aircraft. Smith did not testify about Rhule's alleged incapacitation or its cause.

On cross-examination, the district court, over the plaintiffs' objection, permitted Medivac to impeach Smith based on his seemingly conflicting Rule 26 statements. Specifically, Medivac asked Smith why he had abandoned his original theory and now was advancing an engine failure/no-place-to-land theory that was not outlined in his first Rule 26 statement. After some discussion between counsel and the trial court, Smith's complete initial Rule 26 statement was read to the jury, and Smith freely discussed his incapacitation theory—without objection by the plaintiffs. On redirect, Smith testified that engine failure was his theory all along and that the reason for Rhule's conduct was incapacitation. Smith was permitted to provide detailed information on his incapacitation theory because Medivac "opened the door" during its cross-examination. In sum, as they had desired from the beginning, the plaintiffs were able to present to the jury all their evidence regarding incapacitation.

At the close of evidence, a final instruction conference was held. The district court decided to include an instruction on incapacitation since it had been addressed during trial.[7] During closing argument, the plaintiffs argued that incapacitation, not pilot negligence, explained Rhule's conduct during the fatal flight, and that it was impossible for even a clear headed pilot to successfully complete an emergency landing in the particular geographic region. In response, the defendants argued that Smith had changed his opinion from incapacitation to engine failure/no-place-to-land and then back to incapacitation. Further, Medivac pointed out that Smith was not part of the plaintiffs' case-in-chief, but was only called as a "Mr. Eggspuehler-bashing exercise."

The plaintiffs did not object during Medivac's entire closing argument. Nor did they object after closing arguments were completed and before the jury retired. Instead, the plaintiffs defended Smith's apparent change of mind stating:

> They made a big stink out of the fact that we didn't ask him, on direct, questions about incapacitation. You're being misled on that particular topic. You'll just have to know that we were following the guidelines and procedures set down by this court, and if I wasn't right, the judge would correct me on that particular issue. We were following the rules as laid down by this Court on that particular issue.

The plaintiffs did not explain exactly what the court's earlier ruling on the incapacitation issue was; nor did they ask the court to explain it or tender a jury instruction on the issue. On April 16, 1992, the jury returned a verdict for the defendants.

### III. Trial Challenges

The plaintiffs' brief describes in vivid detail several injustices they claim to have suffered at the hands of the district judge and defense counsel during trial. Once one wades through the unhelpful minutia, three legal arguments remain: (1) the trial court

---

7. The court's instruction read:
    If you find that the pilot was incapacitated, you must determine by a preponderance of the evidence whether the incapacitation was caused by any conduct of the defendants.

abused its discretion by refusing to grant a mistrial once the defense read the redacted version of Luke Smith's deposition testimony at trial; (2) the trial court abused its discretion by allowing the defense to use Luke Smith's two Rule 26 statements to impeach him at trial; and (3) the trial court abused its discretion by permitting the defense to make certain arguments during its closing.

### A. Deposition Testimony

■ The plaintiffs contend that only a mistrial could cure the prejudice that resulted from the defense's misleading reading of Luke Smith's deposition. The decision to grant or deny a motion for mistrial is within the discretion of the district court, and we will only reverse for a clear abuse of that discretion. *United States v. Canino,* 949 F.2d 928, 937 (7th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1940, 118 L.Ed.2d 546 (1992). "In deciding whether the court abused its discretion, we assume that a trial judge is in the best position to determine whether an incident was so serious as to warrant a mistrial." *Id.* After reviewing the record, we believe that because any potentially prejudicial jury confusion stemming from the presentation of the deposition was cured by subsequent events at trial, the district court did not abuse its discretion by refusing to grant the plaintiffs' mistrial motion.

■ Federal Rule of Civil Procedure 32(a) permits the use of deposition testimony during trial, and "the decision to admit deposition testimony is within the sound discretion of the district court." *Oostendorp v. Khanna,* 937 F.2d 1177, 1179 (7th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 951, 117 L.Ed.2d 119 (1992). The plaintiffs do not claim that the trial court erred in admitting Smith's deposition. Rather, the plaintiffs real argument is with the presentation of the deposition, not its admission.

Under Federal Rule of Evidence 611, the district court has discretion to control the "manner in which deposition testimony is presented." *Id. See also Nachtsheim v. Beech Aircraft,* 847 F.2d 1261, 1276 (7th Cir.

1988). It follows, then, that the district court had discretion, in this case, to decide whether the evidence was presented in such a way that a mistrial was necessary to avoid unfairness to the plaintiffs. Ultimately, the district court decided that a mistrial was not necessary.[8] We cannot say this decision was an abuse of discretion.

After the redacted version of the deposition testimony had been read, the trial judge permitted the plaintiffs to read EVERY additional passage they desired pursuant to the Rule of Completeness embodied in Federal Rule of Evidence 106 and Federal Rule of Civil Procedure 32(a)(4). Understandably, the plaintiffs do not argue that the trial court unfairly applied Rule 106. Instead they vaguely suggest that *Rainey v. Beech Aircraft Corp.,* 784 F.2d 1523 (11th Cir.1986), *reinstated en banc,* 827 F.2d 1498 (11th Cir. 1987), *rev'd on other grounds,* 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988), supports their request for a new trial. *Rainey* held that the trial court erred in failing to utilize Rule 106 by "permitting the defendants to examine Rainey about portions of his letter while prohibiting cross-examination about other relevant portions." *Id.* at 1529. The fact that the district judge in the instant case allowed the plaintiffs to introduce all the remaining portions of the deposition that they requested easily distinguishes *Rainey.*

However, the district court's utilization of the Rule of Completeness was not the only way any potential jury confusion was dispelled. Luke Smith eventually took the stand and testified, during which the subject of his incapacitation theory was thoroughly discussed with both parties' counsel. We are satisfied that the complete reading of the deposition and Smith's subsequent in-court testimony cleared away any jury confusion that existed regarding Smith's opinion of the cause of the airplane crash. Therefore, we hold that the trial court did not abuse its discretion by failing to declare a mistrial.

### B. Impeachment of Luke Smith

■ The plaintiffs' second argument is that the district court erred in allowing the

---

8. The district court did not rule on the plaintiffs' motion until after the jury returned its verdict.

defense to impeach Smith with his "conflicting" Rule 26 statements.[9] As mentioned above, the plaintiffs filed two separate statements regarding Smith's expert opinion pursuant to Rule 26. The first, filed prior to trial, stated:

> Pilot William Harry Rhule was rendered incapable of piloting the accident aircraft as a result of his inhalation of fuel vapors. While Rhule was incapacitated, the engine starved for fuel and began to produce intermittent power surges. During the intermittent power surges, the KC–150 autopilot on the accident aircraft was activated and attempted to hold altitude in accordance with its intended manufacturing design. The accident aircraft crashed as a result of the autopilot's attempts to hold altitude during the intermittent power surges.
>
> Medivac, Inc. should have employed a fuel transfer system instead of introducing the ferry fuel system into the factory installed system with a "T" fitting.

Immediately prior to his trial appearance, but after Eggspuehler had testified that, but for pilot negligence, the plane could have been landed safely, Smith filed a second statement which read:

> In order to clear up any confusion on defendants' part regarding the scope of my trial testimony, I take this opportunity to clarify that I will testify regarding all pilot issues pertaining to Rhule and the Lake Renegade 250, including but not limited to my opinion that execution of an emergency off-airport landing in the vicinity of the crash site would likely have resulted in catastrophic damage to the aircraft and personal injury or death to pilot Rhule.

As mentioned above, Smith ultimately took the stand as a rebuttal witness for the plaintiffs. Prior to his cross-examination, the plaintiffs argued that the defense should not be permitted to impeach Smith on the basis of a change in his theory. The trial court concluded that the defendants could impeach Smith any way they chose. During cross-examination, the defense pointed out that Smith was testifying to an engine failure/impossible-to-land-safely theory in court but had not previously mentioned engine failure or the ability of the pilot to land safely in his initial Rule 26 statement. Then the following exchange occurred:

Q. Isn't it true that you had an entirely different opinion when I asked you these questions two months ago about the cause of the crash?

A. Not an entirely different opinion, but my opinion is different from some of the questions you're asking me now, yes.

Shortly thereafter, the trial judge concluded that the defense had "opened the door" to the incapacitation theory and instructed Smith to read, in its entirety, his initial Rule 26 statement, and permitted him to discuss freely his incapacitation theory. Moreover, on redirect, the plaintiffs were able to explore fully the subject of incapacitation.

The plaintiffs contend that the defense should not have been permitted to impeach Smith in this way because the defense was the party who successfully barred the evidence concerning incapacitation in the first place. In support of their position, the plaintiffs rely on three cases: *Joseph v. Brierton,* 739 F.2d 1244 (7th Cir.1984); *Bobb v. Modern Products, Inc.,* 648 F.2d 1051 (5th Cir. 1981); *Harbin v. Interlake Steamship Co.,* 570 F.2d 99 (6th Cir.), *cert. denied,* 437 U.S. 905, 98 S.Ct. 3091, 57 L.Ed.2d 1135 (1978). *Brierton* and *Harbin* are irrelevant to our inquiry because they address improper closing arguments, not improper impeachment techniques. Hence, we need only examine *Bobb.*

In *Bobb,* the trial court granted a defense motion, refusing to admit a physician's deposition testimony supporting the plaintiffs' case because it was untimely and cumulative. 648 F.2d at 1055. However, during cross-examination, the defense questioned another plaintiff expert on the excluded testimony. *Id.* The appellate court ordered a new trial stating, "cross-examination which attempts to impeach by slipping hearsay evidence into

---

9. The defendants argue that the plaintiffs waived this argument by failing to make a specific objection to the use of the Rule 26 statements. We disagree. Counsel for the plaintiffs clearly conveyed the substance of their objection to the trial court, preserving it for our review.

the trial will not be permitted, particularly in a case such as this one where the cross-examiner had previously succeeded in keeping out closely related testimony." *Id.*

Needless to say, the plaintiffs focus on the second clause in the foregoing sentence and argue that Medivac should not have been able to use information it had previously succeeded in excluding. However, when one reads *Bobb* completely, without a myopic focus on one sentence, it is clear that the court reversed because the defense "utilized the improper hearsay question as substantive evidence supporting the defendant's own witness." *Id.* at 1056.

The instant case is distinguishable. Medivac used Rule 26 statements already admitted into evidence, not excluded hearsay, to impeach Smith—in fact, the statements were even read to the jury during the cross-examination. In addition, the *Bobb* court stressed the fact that the plaintiffs were unable to explain and argue the contents of the physician's deposition because it was not substantive evidence. Here, the plaintiffs were able to delve into the incapacitation issue fully, as they had wanted to do from the start, and were able to argue it to the jury in closing. The plaintiffs' reliance on *Bobb* is misplaced.

■ The plaintiffs' final contention is a general assertion that the impeachment technique was improper and prejudicial. In the context of this case, we believe it was neither. Federal Rule of Evidence 611 commits the management of cross-examination to the trial court. Thus we will reverse only if allowing this impeachment technique constitutes a clear abuse of discretion. *Mercado v. Ahmed,* 974 F.2d 863, 872 (7th Cir.1992); *United States v. Carter,* 910 F.2d 1524, 1530 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1628, 113 L.Ed.2d 724 (1991). In light of the fact that witnesses may be impeached with prior inconsistent statements, Fed.R.Evid. 613, we cannot say the trial court abused its discretion by permitting Medivac to impeach Smith with his "inconsistent" Rule 26 statements.

The plaintiffs appear to argue that the impeachment was improper because Smith's theories were not "inconsistent." According to the plaintiffs, the plane could have crashed because of a combination of engine failure, pilot incapacitation and the lack of a safe place to land. However, as the defense points out, on the specific issue of causation, Smith's two Rule 26 statements seem inconsistent—certainly inconsistent enough to justify inquiry into them during cross-examination. Smith's first statement did not mention anything that can fairly be interpreted as an opinion that a safe emergency landing was impossible, even by a clear headed pilot. This theory only appeared in the second statement, given after Eggspuehler testified that a safe landing was possible and the pilot was negligent not to have managed one. The defense was entitled to treat these theories as inconsistent as well as to question why Smith had not mentioned the latter one earlier.

■ Moreover, the trial court's handling of the impeachment was fair to both sides. The defense was allowed to show that Smith was willing to testify to a theory that was not his original or strongest opinion; the plaintiffs subsequently were allowed a complete discussion of the incapacitation theory despite the court's earlier ruling that incapacitation could not be discussed by Smith because he was incompetent to offer a medical opinion on the subject. The plaintiffs' contention that the defense "opened the door" to the incapacitation theory in bad faith so that they could impeach Smith is not borne out by the record. The defense tried to avoid "opening the door"; in fact, the trial court noted that the defense had made a good faith effort to comply with its rulings. The impeachment technique was not improper.

Nor was the impeachment unfairly prejudicial to the plaintiffs. We note that the defense attempted to impeach Smith on several issues, not just his alleged vacillation. Therefore, we are not convinced that Smith's credibility in the eyes of the jury was tarnished solely because of the challenged technique. The plaintiffs insist that they were particularly prejudiced because they could not tell the jury why Smith had not testified to the incapacitation theory during their case-in-chief and why he seemed to have flip-flopped his opinion. The plaintiffs correctly

point out that their case likely would have been considerably weakened if they had told the jury that Smith was incompetent to testify about incapacitation.

However, the plaintiffs focus on the court's ruling as the source of their problem without acknowledging that the ruling was the direct result of their failure to present a competent medical witness on the incapacitation issue. We will not visit that error on the district court, and note that the plaintiffs do not appeal the court's ruling on the competency issue. Moreover, the court never ruled that the plaintiffs could not explain the ruling; nor did the court refuse a request by the plaintiffs to explain its ruling or give a relevant jury instruction. The plaintiffs simply made a tactical decision not to use this particular argument to explain Smith's behavior. Any prejudice that resulted must be attributed to the plaintiffs' counsel. There was no abuse of discretion by the district judge.

### C. Defendant's Closing Argument

The plaintiffs' final assignment of error relates to Medivac's closing argument. In their opening brief, the plaintiffs argue that defense counsel's closing argument was improperly based on "material which was neither in evidence nor fairly inferrable from facts in evidence." In response, the defendants contend that the plaintiffs waived this argument by failing to object at trial, and citing *Deppe v. Tripp*, 863 F.2d 1356 (7th Cir.1988).

■ To the extent that the plaintiffs are truly claiming that defense counsel's closing was improper because he argued outside the evidence and its fair inferences, this argument is waived. *Deppe* requires a party to object to alleged errors either during closing argument or before the case is submitted to the jury. *Id.* at 1356. The plaintiffs did neither.

However, a closer inspection of the plaintiffs' argument suggests that their real complaint is one we have already addressed: the propriety of Smith's impeachment. The "facts not in evidence" to which the plaintiffs object are (1) that Smith did not testify during their case-in-chief and (2) that Smith's

Rule 26 statements were seemingly inconsistent. The inference to which the plaintiffs object is that Smith was less than genuine and forthcoming. These complaints were the very ones the plaintiffs asserted in their improper impeachment argument—a point they stress in their reply brief in an attempt to avoid the defendants' waiver defense.

■ The plaintiffs preserved their objection to the impeachment during trial, as we noted earlier. However, we have already held that Smith's impeachment was permissible. Consequently, defense counsel was free to argue these facts in his closing because they constituted properly admitted evidence. Furthermore, it was proper for defense counsel to argue the inference that Smith's credibility was questionable in light of these facts.

### IV. Costs

■ In its original judgment, the trial court awarded costs to the defendants pursuant to Rule 54(d). Subsequently, the defense moved for additional costs pursuant to Rule 68. After the plaintiffs responded, the district court ruled that Rule 68 costs were appropriate and ordered the defendants to file a Bill of Costs. Medivac filed a bill of costs for $82,872.50 pursuant to Rule 54(d) and Rule 68. The plaintiffs objected, arguing that Rule 68 costs were not permitted under *Delta Air Lines*, and that the foregoing amount exceeded the costs permissible under Rule 54(d) as defined by 28 U.S.C. § 1920. In response, Medivac filed an additional petition seeking another $16,791.81 in expert witness fees. The plaintiffs renewed their objections. On January 13, 1993, judgment was entered on an order taxing costs against the plaintiffs for $93,720.72 pursuant to Rule 68. This timely appeal followed.

The district court did not believe that *Delta Air Lines* prohibited it from awarding the prevailing defendants costs under Rule 68. The district court stated:

> With all deference, this court does not view the majority opinion in *Delta Airlines* [*Air Lines*], 450 U.S. at 346 [101 S.Ct. at 1146], as an inhibition upon this court exercising its discretion in this case awarding costs to the prevailing defendants, given that this district judge presided over all proceedings

in this case, including a jury trial in which the conduct of counsel was extremely acrimonious at points, including counsel for these plaintiffs.

Memorandum and Order, May 20, 1992.

The court's legitimate concern regarding the conduct of counsel during the course of the trial is certainly understandable; however, we must respectfully disagree with the learned judge's reading of *Delta Air Lines.* We read the Supreme Court's opinion as stating that Rule 68 is inapplicable when there is a defense verdict. 450 U.S. at 352, 101 S.Ct. at 1150. The court, in our view, did not base this holding on whether counsel acted offensively or whether the defense's settlement offer was "reasonable." The following passages outline the discretion afforded the trial court in awarding costs under Rule 68 and Rule 54(d):

> We cannot reasonably conclude that the drafters of the Federal Rules intended on the one hand affirmatively to grant the district judge discretion to deny costs to the prevailing party under Rule 54(d) and then on the other hand give defendants— and only defendants—the power to take away that discretion by performing a token act [making a nominal settlement offer].
>
> \*   \*   \*   \*   \*   \*
>
> As we have already noted, [Rule 68] does not apply to judgments in favor of the defendant or to judgments in favor of the plaintiff for an amount greater than the settlement offer. In both of those extreme situations the trial judge retains his Rule 54(d) discretion. In the former his discretion survives because the Rule applies only to judgments "obtained by the offeree"; in the latter, it survives because the Rule does not apply to a judgment "more favorable than the offer."

*Id.* at 353–54, 101 S.Ct. at 1150–51.

Thus, in cases where a defense verdict. follows a rejected defense settlement offer, the trial court has discretion to award Rule 54(d) costs, but it does not have the ability to award Rule 68 costs. *See also Roberts v. Homelite Division of Textron, Inc.,* 117 F.R.D. 637, 639 (N.D.Ind.1987) (Rule 68 "applies only to offers made by the defendant and only to judgments obtained by the plaintiff"). Because the district court erred in awarding Rule 68 costs to the prevailing defendant in this case, the judgment awarding costs is vacated.

■ Moreover, contrary to the defendants' assertion, a remand for a determination of costs under Rule 54(d) is necessary. As mentioned, the amount of costs taxable under Rule 54(d) were contested by the parties. The district court's order reflects that the court did not resolve these disputes because it applied Rule 68, which mandates payment of *all* costs. For example, in response to the defendants' request for $67,-530.17 in witness fees, the district court stated:

> Although the taxation of witness fees under 28 U.S.C. § 1920 *et seq.* are limited to $40.00 per day, Rule 68 once again removes this limitation. This court has discretion under Rule 54(d) as to whether to award witness costs to the prevailing party. Under Rule 68, however, the plaintiff *must* pay the costs incurred after making of the offer if the ultimate judgment is less than the rejected offer (emphasis in original).

We believe this passage makes it clear that the district court did not exercise its discretion under Rule 54(d) in awarding costs, and we will not usurp its role by setting costs ourselves. As a result, we remand this case to the district court for an award of costs to the defendants pursuant to Rule 54(d).

## V. Conclusion

Based on the foregoing analysis, the judgment on the merits for the defendants is AFFIRMED; the defendants' award of costs is VACATED and the case REMANDED for a new award based solely on Rule 54(d).