S.A. HEALY COMPANY,
Plaintiff–Appellant,

v.

MILWAUKEE METROPOLITAN
SEWERAGE DISTRICT,
Defendant–Appellee.

No. 95–1072.

United States Court of Appeals,
Seventh Circuit.

Argued May 31, 1995.

Decided July 13, 1995.

---

Jane C. Schlicht, Godfrey & Kahn, Milwaukee, WI, Vivian Katsantonis, Mark Sgarlata, Timothy F. Brown (argued), Watt, Tieder & Hoffar, McLean, VA, for plaintiff-appellant.

Robert Crawford (argued), Milwaukee Metropolitan Sewerage Dist., Milwaukee, WI, for defendant-appellee.

Before POSNER, Chief Judge, RIPPLE, Circuit Judge, and NORGLE, District Judge.*

POSNER, Chief Judge.

This is a sequel to *S.A. Healy Co. v. Milwaukee Metropolitan Sewerage District*, 50 F.3d 476 (7th Cir.1995), where we affirmed a judgment of $1,574,021 for Healy in its diversity suit for breach of contract. During the litigation, Healy had made a settlement demand upon the sewage district of $1,125,000, which the district had rejected. Thirty-four days after the entry of judgment, Healy had moved the district court to award it double its taxable costs plus interest on the judgment at the rate of 12 percent from the date of the demand to the date on which the judgment is paid. At the time the motion was made, the sum of the costs and interest demanded was almost $200,000.

The legal basis for the demand was Wis. Stat. §§ 807.01(3), (4). These sections provide that if a plaintiff's settlement demand is rejected and the plaintiff goes on to win a judgment larger than the demand, he is entitled to twice his taxable costs plus interest at the rate of 12 percent from the date of the demand to the date when the judgment is paid. The district court denied Healy's motion on the ground that Rule 68 of the Federal Rules of Civil Procedure occupies the field of settlement offers in federal litigation and precludes the application of state rules dealing with the subject even when, because the basis of federal jurisdiction is diversity of citizenship, the substantive rules of decision are state rather than federal. Rule 68 provides that if a defendant makes a settlement offer which is rejected and the plaintiff wins a smaller amount at trial, the plaintiff shall be liable for the costs that were incurred after the making of the offer. The Wisconsin statute contains a nearly identical provision. Wis.Stat. § 807.01(1). But unlike the Wisconsin statute, Rule 68 makes no provision for settlement *demands* (that is, plaintiffs' offers as distinct from defendants').

■ The sewage district argues that Healy's motion, filed as we have said 34 days after the entry of judgment, was untimely, and therefore was rightly denied irrespective of its merits. A local rule of the U.S. District Court for the Eastern District of Wisconsin requires that the bill of costs be filed within 15 days of the judgment, E.D.Wis.R. 9.01; and a request for prejudgment interest must, the sewage district argues, be filed within 10 days of the judgment because it is a request to alter or amend the judgment and is therefore governed by Fed.R.Civ.P. 59(e), which has a 10–day deadline.

■ Because Fed.R.Civ.P. 54(d) specifies no deadline for filing a bill of costs, the time for filing such a bill is normally governed by local rules such as that of the Eastern District of Wisconsin. See, e.g., *Matei v. Cessna*

---

* Hon. Charles R. Norgle, Sr., of the Northern District of Illinois.

*Aircraft Co.,* 35 F.3d 1142, 1147 (7th Cir. 1994); *Congregation of the Passion v. Touche, Ross & Co.,* 854 F.2d 219, 220–21 (7th Cir.1988); *Bittner v. Sadoff & Rudoy Industries,* 728 F.2d 820, 827 (7th Cir.1984). And prejudgment interest, unlike post-judgment interest, normally is considered an element of the judgment itself, that is, of the relief on the merits, and hence governed by Rule 59(e). *Osterneck v. Ernst & Whinney,* 489 U.S. 169, 176, 109 S.Ct. 987, 991, 103 L.Ed.2d 146 (1989). But the Wisconsin rule on the consequences of turning down a plaintiff's settlement demand is not a rule about the taxing of costs, or the awarding of pre-judgment interest, in the usual senses of "costs" and of "prejudgment interest." The rule imposes a sanction on defendants for turning down reasonable settlement demands. "Costs" and "prejudgment interest" (actually partly prejudgment and partly post-judgment, for the interest is computed from the date of the demand to the date of the payment of the judgment, but we shall ignore this refinement) are merely the measuring rods for determining the amount of the sanction. Wisconsin could have said to defendants that if they reject a modest settlement demand—modest because the plaintiff won a larger judgment at trial—they must pay the plaintiff $200,000 above his judgment. Then it would be plain that this additional relief was entirely separate from the judgment—that it was like an award of attorney's fees to a defendant as a sanction for filing a frivolous suit. The logic of the measuring rods actually used is transparent. Since as a prevailing party the plaintiff would be entitled to an award of costs anyway, doubling them provides a sanction equivalent to that imposed on a plaintiff who turns down a settlement offer by the defendant and then does worse at trial. But there is an additional asymmetry between plaintiffs and defendants: delay in accepting the plaintiff's demand allows the defendant to earn interest on money that (it is subsequently determined) should really be the plaintiff's. The award of interest from the date of the settlement demand deprives the defendant of this incentive to reject rightful demands.

Healy sought "regular" Rule 54(d) costs, the kind awarded to the prevailing party more or less as a matter of course—and was turned down for missing the 15–day dead-line—before it asked for double costs and prejudgment interest under the Wisconsin settlement rule. And it made a timely motion for "regular" prejudgment interest, which the district judge denied on the ground that the contract claim was not sufficiently definite to support such an award under the Wisconsin law of contracts. The issues underlying the motion for prejudgment interest that Healy filed under the Wisconsin rule had nothing to do with Healy's contractual rights and hence with the judgment it obtained in the suit, just as the double costs it sought were unrelated to the costs taxable under Rule 54(d) because imposed for a completely different reason, as a sanction for turning down a settlement demand.

■ The proper analogy is to the awarding of attorney's fees, a proceeding deemed collateral to (which is to say separate from) the case on the merits because the amount of fees cannot be determined until the trial is over and because there is limited overlap between the issues in the trial and the issues bearing on the amount of and entitlement to fees. Being collateral, a motion for attorney's fees is not subject to the 10–day limit of Fed.R.Civ.P. 59(e). *Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988). So what limit *is* such a motion subject to? When the attorney's fees are taxed as costs, which is the usual way in which a prevailing party obtains such fees, see, e.g., 42 U.S.C. § 1988, the deadline for seeking them is 14 days, Fed.R.Civ.P. 54(d)(2)(B), unless this time is extended by an order (including, we have held, a standing order, or rule, *Johnson v. Lafayette Fire Fighters Ass'n,* 51 F.3d 726 (7th Cir.1995)) of the district court. There was no order here as such, and the parties have not told us whether the Eastern District of Wisconsin has a rule extending (or contracting) the 14–day limit—but in fact it does, to 90 days. E.D.Wis.R. 9.04. This does not get Healy home free, for while the motion here is analogous to a motion for attorney's fees, it was not in fact such a motion, so neither Fed.R.Civ.P. 54(d)(2)(B)

nor E.D.Wis.R. 9.04 applies. No matter. Whatever the time limits are for such a motion—and maybe there are none, other than the implied default rule of reasonableness, *Max M. v. New Trier High School District No. 203*, 859 F.2d 1297, 1300 (7th Cir.1988)—they are not jurisdictional. The deadline in Rule 54(d)(1) for objecting to the calculation of costs is not jurisdictional, we held in *Lorenz v. Valley Forge Ins. Co.*, 23 F.3d 1259 (7th Cir.1994), and the analogy to the motion filed here is compelling.

■ The clincher is *Lentomyynti Oy v. Medivac, Inc.*, 997 F.2d 364, 366–68 (7th Cir.1993), where we held that a motion for costs under Fed.R.Civ.P. 68, the federal counterpart to the Wisconsin rule under which Healy was proceeding, was not a Rule 59(e) motion. We cannot think of any sound basis for distinguishing between the two types of motion. It is true that Rule 68 contains no provision regarding interest, but we cannot see what difference that should make. We also hinted in *Lentomyynti Oy* that the costs sought in a motion under Rule 68 are not identical to Rule 54(d) costs, 997 F.2d at 368, and we make that explicit today. This means that a local rule prescribing a deadline for Rule 54(d) motions is not *automatically* applicable to a motion for costs under Rule 68 or a motion for double costs under the Wisconsin statute. Apparently Judge Gordon did not consider the local rule applicable, because he did not reject Healy's motion as time-barred, though urged to do so by the sewage district. We add that since the federal rules do not provide deadlines for Rule 68 motions, let alone for motions under counterpart state statutes, district courts are free to fix deadlines for these motions in their local rules.

But all that is important today is that we have jurisdiction and so can proceed, as did the district judge, to the merits.

The applicability of state procedural rules in federal diversity litigation is a knotty issue. A bit of history may help untie the knot. Before the revolution in federalism of 1938, federal district courts in diversity cases conformed their procedures (with immaterial exceptions) to those of the state in which the court was located, but (again with immaterial exceptions) were not bound by the common law of the state. This pattern was reversed by the promulgation of the Federal Rules of Civil Procedure, which created a separate and distinctive code of procedure for federal courts in all cases, including diversity cases, and by the Supreme Court's decision in *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), which held that federal courts were bound by state common law in all cases in which they would be bound by state statutory law. The decision in *Erie* was influenced though not determined by the felt undesirability of forum shopping (sometimes accomplished through such exotic devices as reincorporation in a different state), which had been encouraged by a regime in which the choice of state or federal court might determine what substantive law would govern the litigation. See *id.* at 73–77, 58 S.Ct. at 819–22. Concern with forum shopping argued for an interpretation of "substance" that would encompass any rule, however "procedural" in the ordinary sense, that might determine the outcome of the case. *Guaranty Trust Co. v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945) (Frankfurter, J.). But such an interpretation threatened to emasculate the new Federal Rules of Civil Procedure, some of which might well swing the outcome in particular cases. *Byrd v. Blue Ridge Rural Electric Coop. Inc.*, 356 U.S. 525, 536–37, 78 S.Ct. 893, 900, 2 L.Ed.2d 953 (1958); *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). A good example was Rule 35, which entitles the defendant in a personal injury suit to conduct a medical examination of the plaintiff if the plaintiff's physical or mental condition is relevant to the issues in the suit. The rule is not limited to personal injury suits, or invokable only by defendants, but that is its usual use and its usual invocation; and it is thus a rule that by and large favors defendants. One could easily imagine a defendant removing a diversity personal injury suit to federal court for the sole purpose of invoking Rule 35 (for in 1938 many state procedural codes lacked a counterpart to that rule, *Sibbach v. Wilson & Co.*, 312 U.S. 1, 13–14, 61 S.Ct. 422, 426, 85 L.Ed. 479 (1941)) and for that invocation to be decisive on the amount of damages awarded the plaintiff.

Cf. *Flaminio v. Honda Motor Co.*, 733 F.2d 463, 472 (7th Cir.1984).

■ The policy of avoiding potentially outcome-determinative discrepancies between state and federal law in the diversity setting is inconsistent with the policy of subjecting federal litigation, including diversity litigation, to a distinctive set of federal procedures. So it should come as no surprise that there is no clear criterion for deciding whether a particular state rule is "substantive" for purposes of deciding whether *Erie* requires that it be enforced in federal diversity litigation. There are, however, two classes of pretty clear cases, although unfortunately our case falls in neither one. The first consists of cases in which the state rule is in actual conflict with one of the Federal Rules of Civil Procedure, so that enforcing the state rule would knock out the federal rule. If the federal rule is within the scope of the Rules Enabling Act, 28 U.S.C. § 2071(a), under which the Federal Rules were promulgated, then it is valid (barring some constitutional objection not here suggested) and the Supremacy Clause requires that the state rules give way. *Burlington Northern Ry. v. Woods*, 480 U.S. 1, 4–5, 107 S.Ct. 967, 969, 94 L.Ed.2d 1 (1987); *Hanna v. Plumer, supra; Flaminio v. Honda Motor Co., supra*, 733 F.2d at 471–72.

The second class of pretty easy cases is where the state procedural rule, though undeniably "procedural" in the ordinary sense of the term, is limited to a particular substantive area, such as contract law, *Coplay Cement Co. v. Willis & Paul Group*, 983 F.2d 1435, 1438 (7th Cir.1993); *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 364 (7th Cir.1990); *AM International, Inc. v. Graphic Management Associates, Inc.*, 44 F.3d 572, 576 (7th Cir.1995), or tort law. *Hines v. Elkhart General Hospital*, 603 F.2d 646 (7th Cir.1979); *Todd v. Merrell Dow Pharmaceuticals, Inc.*, 942 F.2d 1173, 1177 and n. 1 (7th Cir.1991); *Jones v. Griffith*, 870 F.2d 1363, 1368 (7th Cir.1989); *Barron v. Ford Motor Co.*, 965 F.2d 195, 199 (7th Cir. 1992); *Flaminio v. Honda Motor Co., supra*, 733 F.2d at 471. For then the state's intention to influence substantive outcomes is manifest and would be defeated by allowing parties to shift their litigation into federal court unless the state's rule was applied there as well. Suppose a state (as many states have done) establishes a compulsory arbitration mechanism in medical malpractice cases in order to cut down on litigation and reduce malpractice insurance premiums. The state's goals are substantive—designed to shape conduct outside the courtroom and not just improve the accuracy or lower the cost of the judicial process—though the means are procedural. The goals would be thwarted if parties having access to a federal district court under the diversity jurisdiction could thumb their noses at the compulsory procedure. *Hines v. Elkhart General Hospital, supra; Feinstein v. Massachusetts General Hospital*, 643 F.2d 880, 886 (1st Cir. 1981); *Woods v. Holy Cross Hospital*, 591 F.2d 1164, 1168–69 (5th Cir.1979); cf. *Sioux County v. National Surety Co.*, 276 U.S. 238, 243, 48 S.Ct. 239, 240, 72 L.Ed. 547 (1928); *Monetti, S.P.A. v. Anchor Hocking Corp.*, 931 F.2d 1178, 1181–82 (7th Cir.1991).

■ Our case is different. There is no direct conflict between the Wisconsin rule concerning plaintiffs' settlement demands and any rule of federal procedure; the part of the state's offer-of-settlement statute involved in this case governs offers by plaintiffs, while Rule 68 is limited to offers by defendants. Yet at the same time the Wisconsin rule is not confined to any particular area of the law such as insurance contracts or products liability or medical malpractice; the rule does not have substantive goals in any obvious sense. What to do? We must go back to first principles—the course recommended in *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752–53, 100 S.Ct. 1978, 1986, 64 L.Ed.2d 659 (1980)—and thus ask two questions: Is the Wisconsin rule so likely to dictate outcomes that it will cause a lot of forum shopping (or, if forum shopping is somehow infeasible, cause like cases to be decided differently) unless it is made applicable to diversity cases and so ceases to be a factor in the choice between state and federal court? Is it so entwined with procedures prescribed by the federal rules that it is likely to impair the integrity of federal procedure if it is applied in diversity cases? If the

answer to the first question is "yes" and to the second "no," then we can be reasonably confident that application of the Wisconsin rule in diversity cases would be consistent with the principles of *Erie* and the Rules Enabling Act. Those in fact are our answers, just as they were the answers the Supreme Court gave in the *Walker* case to the question whether a state's rule on when a lawsuit commences for purposes of tolling the statute of limitations is binding in a diversity suit, and just as they are the answers given by the courts that have dealt with rules similar to the Wisconsin rule at issue in the present case. *Tanker Management, Inc. v. Brunson*, 918 F.2d 1524, 1528–29 (11th Cir.1990); *Fauber v. KEM Transportation & Equipment Co.*, 876 F.2d 327, 331–32 (3d Cir.1989); *Jarvis v. Johnson*, 668 F.2d 740, 745–46 (3d Cir.1982). So we need not consider the more difficult question of what to do when the answer to *both* questions is "yes."

█ The Wisconsin rule favors plaintiffs by giving them the option of putting the defendant to the unhappy choice of either settling on terms favorable to the plaintiff or running a substantial risk of increasing the amount of money to which the plaintiff will be entitled if the case is not settled but instead is tried and the plaintiff wins. If a rule so favorable to plaintiffs is inapplicable in diversity cases, defendants in such cases will have an added incentive to remove a diversity case to federal district court, just as in the days before the *Erie* decision, when a more favorable substantive rule of federal common law might induce a defendant to remove a case from state to federal court or even to reincorporate in a different state in order to create diversity of citizenship. Indeed, the Wisconsin rule is not unlike a rule awarding successful plaintiffs punitive damages on top of compensatory damages; and there is no doubt that such a rule, even if not limited to a particular class of cases—even if reflecting a blanket favoritism for plaintiffs over defendants—would be applicable in diversity suits under *Erie*. *In re Air Crash Disaster Near Chicago*, 644 F.2d 594, 606 (7th Cir.1981); *Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1416 (4th Cir.1992) (en banc); cf. *Magnum Foods, Inc. v. Continental Ca-*

*sualty Co.*, 36 F.3d 1491, 1497 (10th Cir. 1994). That is an easier case than ours because damages are considered "remedial" and settlement practice "procedural," as these terms are usually used. But the effects are so similar that classifying both as "substantive" is certainly a possibility when the likelihood of forum shopping is taken into account and when it is recalled that, at least for the purpose of marking out the scope of the *Erie* decision, the terms "substance" and "procedure" are conclusions rather than algorithms. Cf. *Byrd v. Blue Ridge Rural Electric Coop. Inc., supra*, 356 U.S. at 536, 78 S.Ct. at 900; *Fragoso v. Lopez*, 991 F.2d 878, 881 (1st Cir.1993).

Even closer are cases which hold that a rule shifting attorney's fees to a losing party is "substantive" for purposes of determining whether it applies in a diversity suit, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52–53, 111 S.Ct. 2123, 2136–37, 115 L.Ed.2d 27 (1991); *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622 n. 31, 44 L.Ed.2d 141 (1975); *Powell v. Old Southern Life Ins. Co.*, 780 F.2d 1265, 1267 (5th Cir.1986), as distinguished from a rule that, because it punishes winner *or* loser for improper behavior in the lawsuit, does not systematically favor one side of a lawsuit (that is, either the plaintiff or the defendant) over the other and hence is procedural in the least controversial sense. *Chambers v. NASCO, Inc., supra*, 501 U.S. at 51–55, 111 S.Ct. at 2136–38.

But would such a classification undermine the Federal Rules of Civil Procedure? The only candidate for a specifically endangered rule is Rule 68. We were unable at the argument of the appeal to extract from the sewage district's lawyer any case real or hypothetical in which enforcing the Wisconsin rule on plaintiffs' demands would tread on the toes of Rule 68. The situation would be different if the case involved defendants' offers of settlement, because then we would have a state rule and a federal rule covering the identical issue. It is true that the rules are nearly identical so far as defendants' offers are concerned. The only difference appears to be that under the Wisconsin rule the defendant must make his offer at least 20

days before trial and under the federal rule he need only make it 10 days before trial. Still, this is sufficient inconsistency to make the state rule give way, cf. *Burlington Northern Ry. v. Woods, supra; Exxon Corp. v. Burglin*, 42 F.3d 948, 950–52 (5th Cir. 1995), since both cannot be applied to the same case (suppose the motion was made 15 days before the trial) and there cannot be any doubt that Rule 68 is within the scope of the Rules Enabling Act. But there is no inconsistency when a plaintiff's demand rather than a defendant's offer is in issue. Whether or not the plaintiff makes a settlement demand backed up by the threat latent in the Wisconsin rule, the defendant is free to make his own offer under Rule 68. In this case, for example, the defendant must have thought the plaintiff's settlement demand too high, because it refused the demand. Suppose it refused because its best estimate was that the plaintiff's claim was worth only $750,000. Then it could have made a Rule 68 offer of $750,000. If the plaintiff turned it down and the case went to trial and the plaintiff won less than $750,000, the defendant would be entitled to the award of its costs under Rule 68. This would be true whether or not the plaintiff had made any demand.

■ Rule 68, like Rule 35, favors defendants; in many other respects, however, the Federal Rules of Civil Procedure are very pro-plaintiff, certainly compared with the procedural rules of the average state at the time the rules were first promulgated, but even today. See, e.g., Richard L. Marcus, "The Revival of Fact Pleading under the Federal Rules of Civil Procedure," 86 *Colum.L.Rev.* 433, 439–46 (1986). So we can imagine an argument that by subjecting defendants in diversity cases to Wisconsin's highly pro-plaintiff settlement rule, we would be disturbing a delicate but deliberate balance between plaintiffs and defendants that is struck in the federal rules, and hence undermining the integrity of those rules. The argument is not made, and is anyway unpersuasive. States are allowed to favor plaintiffs—or defendants—who engage in activities, such as, here, making contracts for constructing sewage systems, that are governed by state law. Under *Erie*, this "favor-itism" is to operate even when the persons who have a dispute over state law find themselves in a federal court. The power of the state to jigger procedural rules to favor plaintiffs or defendants in federal diversity suits is limited by the Rules Enabling Act and the Supremacy Clause, but the Wisconsin rule does not transgress those limits. Unless—a final possibility, again not argued by the sewage authority—Rule 68 should be interpreted as if it said outright that no defendant may be penalized for failing to accept a settlement demand. Then we would have a direct conflict, and the Supremacy Clause would be in play.

We cannot find anything in the history or structure of the rule to justify such an interpretation. It is easy to see why the draftsmen of the rule, and the Supreme Court in promulgating it, decided not to make provision for plaintiffs' settlement demands. By hypothesis, a rule penalizing the defendant for turning down a plaintiff's settlement demand will give the plaintiff—who went on to win the case and get a judgment—an extra dollop of relief, akin to punitive damages or attorneys' fees. The decision whether to give successful plaintiffs this additional relief involves considerations of adequacy and proportionality of remedies. Committees drafting or promulgating procedural rules might well decide to leave those considerations to other bodies to weigh.

The judgment is reversed and the case remanded to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.