Justice Stevens,
concurring in part and concurring in the judgment.
The New York law at issue, N. Y. Civ. Prac. Law Ann. (CPLR) § 901(b) (West 2006), is a procedural rule that is not part of New York’s substantive law. Accordingly, I agree with Justice Scalia that Federal Rule of Civil Procedure 23 must apply in this case and join Parts I and II-A of the Court’s opinion. But I also agree with Justice Ginsburg that there are some state procedural rules that federal courts must apply in diversity cases because they function *417 as a part of the State’s definition of substantive rights and remedies.
I
It is a long-recognized principle that federal courts sitting in diversity “apply state substantive law and federal procedural law.” Hanna v. Plumer, 380 U. S. 460, 465 (1965).[1] This principle is governed by a statutory framework, and the way that it is administered varies depending upon whether there is a federal rule addressed to the matter. See id., at 469-472. If no federal rule applies, a federal court must follow the Rules of Decision Act, 28 U. S. C. § 1652, and make the “relatively unguided Erie choice,”[2] Hanna, 380 U. S., at 471, to determine whether the state law is the “rule of decision.” But when a situation is covered by a federal rule, the Rules of Decision Act inquiry by its own terms does not apply. See § 1652; Hanna, 380 U. S., at .471. Instead, the Rules Enabling Act (Enabling Act) controls. See 28 U. S. C. §2072.
That does not mean, however, that the federal rule always governs. Congress has provided for a system of uniform federal rules, see ibid., under which federal courts sitting in diversity operate as “an independent system for administering justice to litigants who properly invoke its jurisdiction,” Byrd v. Blue Ridge Rural Elec. Cooperative, Inc., 356 U. S. 525, 537 (1958), and not as state-court clones that assume all aspects of state tribunals but are managed by Article III judges. See Hanna, 380 U. S., at 473-474. But while Con *418 gress may have the constitutional power to prescribe procedural rules that interfere with state substantive law in any number of respects, that is not what Congress has done. Instead, it has provided in the Enabling Act that although “[t]he Supreme Court” may “prescribe general rules of practice and procedure,” § 2072(a), those rules “shall not abridge, enlarge or modify any substantive right,” § 2072(b). Therefore, “[w]hen a situation is covered by one of the Federal Rules,... the court has been instructed to apply the Federal Rule” unless doing so would violate the Act or the Constitution. Id., at 471.
Although the Enabling Act and the Rules of Decision Act “say, roughly, that federal courts are to apply state ‘substantive’ law and federal ‘procedural’ law,” the inquiries are not the same. Ibid.; see also id., at 469-470. The Enabling Act does not invite federal courts to engage in the “relatively unguided Erie choice,” id., at 471, but instead instructs only that federal rules cannot “abridge, enlarge or modify any substantive right,” § 2072(b). The Enabling Act’s limitation does not mean that federal rules cannot displace state policy judgments; it means only that federal rules cannot displace a State’s definition of its own rights or remedies. See Sibbach v. Wilson & Co., 812 U. S. 1, 13-14 (1941) (reasoning that “the phrase ‘substantive rights’ ” embraces only those state rights that are sought to be enforced in the judicial proceedings).
Congress has thus struck a balance: “ [Housekeeping rules for federal courts” will generally apply in diversity cases, notwithstanding that some federal rules “will inevitably differ” from state rules. Hanna, 380 U. S., at 473. But not every federal “rul[e] of practice or procedure,” § 2072(a), will displace state law. To the contrary, federal rules must be interpreted with some degree of “sensitivity to important state interests and regulatory policies,” Gasperini v. Center for Humanities, Inc., 518 U. S. 415, 427, n. 7 (1996), and applied to diversity cases against the background of Congress’ *419 command that such rules not alter substantive rights and with consideration of “the degree to which the Rule makes the character and result of the federal litigation stray from the course it would follow in.state courts,” Hanna, 380 U. S., at 473. This can be a tricky balance to implement.[3]
It is important to observe that the balance Congress has struck turns, in part, on the nature of the state law that is being displaced by a federal rule. And in my view, the application of that balance does not necessarily turn on whether the state law at issue takes the form of what is traditionally described as substantive or procedural. Rather, it turns on whether the state law actually is part of a State's framework of substantive rights or remedies. See § 2072(b); cf. Hanna, 380 U. S., at 471 (“The line between ‘substance’ and ‘procedure’ shifts as the legal context changes”); Guaranty Trust Co. v. York, 326 U. S. 99, 108 (1945) (noting that the words “‘substance’” and “‘procedure’” “[e]ach impl[y] different variables depending upon the particular problem for which [they] are used”).
Applying this balance, therefore, requires careful interpretation of the state and federal provisions at issue. “The line between procedural and substantive law is hazy,” Erie R. Co. v. Tompkins, 304 U. S. 64, 92 (1938) (Reed, J., concurring in result), and matters of procedure and matters of substance are not “mutually exclusive categories with easily ascertainable contents,” Sibbach, 312 U. S., at 17 (Frankfurter, J., dissenting). Rather, “[r]ules which lawyers call procedural do not always exhaust their effect by regulating procedure,” Cohen v. Beneficial Industrial Loan Corp., 337 U. S. 541, 555 (1949), and in some situations, “procedure and substance are so interwoven that rational separation becomes well-nigh impossible,” id., at 559 (Rutledge, J., dissenting). A “state procedural rule, though undeniably ‘procedural’ in the ordinary *420 sense of the term,” may exist “to influence substantive outcomes,” S. A. Healy Co. v. Milwaukee Metropolitan Sewerage Disk, 60 F. 3d 305, 310 (CA7 1995) (Posner, J.), and may in some instances become so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy. Such laws, for example, may be seemingly procedural rules that make it significantly more difficult to bring or to prove a claim, thus serving to limit the scope of that claim. See, e. g., Cohen, 337 U. S., at 555 (state “procedure” that required plaintiffs to post bond before suing); Guaranty Trust Co., 326 U. S. 99 (state statute of limitations).[4] Such “procedural rules” may also define the amount of recovery. See, e. g., Gasperini, 518 U. S., at 427 (state procedure for examining jury verdicts as means of capping the available remedy); Moore § 124.07[3][a] (listing examples of federal courts’ applying state laws that affect the amount of a judgment).
In our federalist system, Congress has not mandated that federal courts dictate to state legislatures the form that their substantive law must take. And were federal courts to ignore those portions of substantive state law that operate as procedural devices, it could in many instances limit the ways that sovereign States may define their rights and remedies. When a State chooses to use a traditionally procedural vehicle as a means of defining the scope of substantive rights or remedies, federal courts must recognize and respect that choice. Cf. Ragan v. Merchants Transfer & Warehouse Co., 337 U. S. 530, 533 (1949) (“Since th[e] cause of action is cre *421 ated by local law, the measure of it is to be found only in local law. . . . Where local law qualifies or abridges it, the federal court must follow suit”).
II
When both a federal rule and a state law appear to govern a question before a federal court sitting in diversity, our precedents have set out a two-step framework for federal courts to negotiate this thorny area. At both steps of the inquiry, there is a critical question about what the state law and the federal rule mean.
The court must first determine whether the scope of the federal rule is “‘sufficiently broad’” to “‘control the issue’” before the court, “thereby leaving no room for the operation” of seemingly conflicting state law. See Burlington Northern R. Co. v. Woods, 480 U. S. 1, 4-5 (1987); Walker v. Armco Steel Corp., 446 U. S. 740, 749-750, and n. 9 (1980). If the federal rule does not apply or can operate alongside the state rule, then there is no “Ac[t] of Congress” governing that particular question, 28 U. S. C. § 1652, and the court must engage in the traditional Rules of Decision Act inquiry under Erie and its progeny. In some instances, the “plain meaning” of a federal rule will not come into “ ‘direct collision’ ” with the state law, and both can operate. Walker, 446 U. S., at 750, n. 9, 749. In other instances, the rule “when fairly construed,” Burlington Northern R. Co., 480 U. S., at 4, with “sensitivity to important state interests and regulatory policies,” Gasperini, 518 U. S., at 427, n. 7, will not collide with the state law.[5]
*422 If, on the other hand, the federal rule is “sufficiently broad to control the issue before the Court,” such that there is a “direct collision,” Walker, 446 U. S., at 749-750, the court must decide whether application of the federal rule “represents a valid exercise” of the “rulemaking authority ... bestowed on this Court by the Rules Enabling Act,” Burlington Northern R. Co., 480 U. S., at 5; see also Gasperini, 518 U. S., at 427, n. 7; Hanna, 380 U. S., at 471-474. The Enabling Act requires, inter alia, that federal rules “not abridge, enlarge or modify any substantive right.” 28 U. S. C. § 2072(b) (emphasis added). Unlike JUSTICE Scalia, I believe that an application of a federal rule that effectively abridges, enlarges, or modifies a state-created right or remedy violates this command. Congress may have the constitutional power “to supplant state law” with rules that are “rationally capable of classification as procedure,” ante, at 406 (internal quotation marks omitted), but we should generally presume that it has not done so. Cf. Wyeth v. Levine, 555 U. S. 555, 565 (2009) (observing that “we start with the assumption” that a federal statute does not displace a State’s law “unless that was the clear and manifest purpose of Congress” (internal quotation marks omitted)). Indeed, the mandate that federal rules “shall not abridge, enlarge or modify any substantive right” evinces the opposite intent, as does Congress’ decision to delegate the creation of rules to this Court rather than to a political branch, see 19 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §4509, p. 265 (2d ed. 1996) (hereinafter Wright).
Thus, the second step of the inquiry may well bleed back into the first. When a federal rule appears to abridge, en *423 large, or modify a substantive right, federal courts must consider whether the rule can reasonably be interpreted to avoid that impermissible result. See, e. g., Semtek Int’l Inc. v. Lockheed Martin Corp., 531 U. S. 497, 503 (2001) (avoiding an interpretation of Federal Rule of Civil Procedure 41(b) that “would arguably violate the jurisdictional limitation of the Rules Enabling Act” contained in § 2072(b)).[6] And when such a “saving” construction is not possible and the rule would violate the Enabling Act, federal courts cannot apply the rule. See 28 U. S. C. § 2072(b) (mandating that federal rules “shall not” alter “any substantive right” (emphasis added)); Hanna, 380 U. S., at 473 (“[A] court, in measuring a Federal Rule against the standards contained in the Enabling Act..., need not wholly blind itself to the degree to which the Rule makes the character and result of the federal litigation stray from the course it would follow in state courts”); see also Semtek Int’l Inc., 531U. S., at 503-504 (noting that if state law granted a particular right, “the federal court's extinguishment of that right. . . would seem to violate [§ 2072(b)]”); cf. Statement of Justices Black and Douglas, 374 U. S. 865, 870 (1963) (observing that federal rules “as applied in given situations might have to be declared invalid”). A federal rule, therefore, cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right. And absent a governing federal rule, a federal court must engage in the traditional Rules of Decision Act inquiry, under the Erie line *424 of cases. This application of the Enabling Act shows “sensitivity to important state interests,” post, at 442 (internal quotation marks omitted), and “regulatory policies,” post, at 437, but it does so as Congress authorized, by ensuring that federal rules that ordinarily “prescribe general rules of practice and procedure,” § 2072(a), do “not abridge, enlarge or modify any substantive right,” § 2072(b).
Justice Scalia believes that the sole Enabling Act question is whether the federal rule “really regulates procedure,” ante, at 407, 410, 411, 414, n. 13 (plurality opinion) (internal quotation marks omitted), which means, apparently, whether it regulates “the manner and the means by which the litigants’ rights are enforced,” ante, at 407 (internal quotation marks omitted). I respectfully disagree.[7] This interpretation of the Enabling Act is consonant with the Act’s first limitation to “general rules of practice and procedure,” § 2072(a). But it ignores the second limitation that such rules also “not abridge, enlarge or modify any substantive right,” § 2072(b) (emphasis added),[8] and in so doing ignores the balance that *425 Congress struck between uniform rules of federal procedure and respect for a State’s construction of its own rights and remedies. It also ignores the separation-of-powers presumption, see Wright §4509, at 265, and federalism presumption, see Wyeth, 555 U. S., at 565, that counsel against judicially created rules displacing state substantive law.[9]
*426 Although the plurality appears to agree with much of my interpretation of § 2072, see ante, at 412-413, it nonetheless rejects that approach for two reasons, both of which are mistaken. First, Justice Scalia worries that if federal courts inquire into the effect of federal rules on state law, it will enmesh federal courts in difficult determinations about whether application of a given rule would displace a state determination about substantive rights. See ante, at 409, 414-415, and nn. 14,15. I do not see why an Enabling Act inquiry that looks to state law necessarily is more taxing than Justice Scalia’s.[10] But in any event, that inquiry is what the Enabling Act requires: While it may not be easy to decide what is actually a “substantive right,” “the designations substantive and procedural become important, for the Enabling Act has made them so.” Ely 723; see also Wright §4509, at 266. The question, therefore, is not what rule we think would be easiest on federal courts. The question is what rule Congress established. Although Justice Scalia may generally prefer easily administrable, bright-line rules, his preference does not give us license to adopt a second-best interpretation of the Enabling Act. Courts cannot ignore text and context in the service of simplicity.
*427 Second, the plurality argues that its interpretation of the Enabling Act is dictated by this Court’s decision in Sibbach, which applied a Federal Rule about when parties must submit to medical examinations. But the plurality misreads that opinion. As Justice Harlan observed in Hanna, “shorthand formulations which have appeared in earlier opinions are prone to carry untoward results that frequently arise from oversimplification.” 380 U. S., at 475 (concurring opinion). To understand Sibbach, it is first necessary to understand the issue that was before the Court. The petitioner raised only the facial question whether “Rules 35 and 37 [of the Federal Rules of Civil Procedure] are . . . within the mandate of Congress to this court” and not the specific question of “the obligation of federal courts to apply the substantive law of a state.”[11] 312 U. S., at 9. The Court, therefore, had no occasion to consider whether the particular application of the Federal Rules in question would offend the Enabling Act.[12]
*428 Nor, in Sibbach, was any further analysis necessary to the resolution of the ease because the matter at issue, requiring medical exams for litigants, did not pertain to “substantive rights” under the Enabling Act. Although most state rules bearing on the litigation process are adopted for some policy reason, few seemingly “procedural” rules define the scope of a substantive right or remedy. The matter at issue in Sibbach reflected competing federal and state judgments about privacy interests. Those privacy concerns may have been weighty and in some sense substantive; but they did not pertain to the scope of any state right or remedy at issue in the litigation. Thus, in response to the petitioner’s argument in Sibbach that “substantive rights” include not only “rights sought to be adjudicated by the litigants” but also “general principiéis]” or “question[s] of public policy that the legislature is able to pass upon,” id., at 2-3, we held that “the phrase ‘substantive rights’ ” embraces only state rights, such as the tort law in that case, that are sought to be enforced in the judicial proceedings, id., at 13-14. If the Federal Rule had in fact displaced a state rule that was sufficiently intertwined with a state right or remedy, then perhaps the Enabling Act analysis would have been different.[13] Our subsequent cases are not to the contrary.[14]
*429 III
Justice Ginsburg views the basic issue in this case as whether and how to apply a federal rule that dictates an answer to a traditionally procedural question (whether to join plaintiffs together as a class), when a state law that “defines the dimensions” of a state-created claim dictates the opposite answer. Post, at 447. As explained above, I readily acknowledge that if a federal rule displaces a state rule that is “ ‘procedural’ in the ordinary sense of the term,” S. A. Healy Co., 60 F. 3d, at 310, but sufficiently interwoven with the scope of a substantive right or remedy, there would be an Enabling Act problem, and the federal rule would have to give way. In my view, however, this is not such a case.

Rule 23 Controls Class Certification

When the District Court in the case before us was asked to certify a class action, Federal Rule of Civil Procedure 23 squarely governed the determination whether the court *430 should do so. That is the explicit function of Rule 23. Rule 23, therefore, must apply unless its application would abridge, enlarge, or modify New York rights or remedies.
Notwithstanding the plain language of Rule 23, I understand the dissent to find that Rule 23 does not govern the question of class certification in this matter because New York has made a substantive judgment that such a class should not be certified, as a means of proscribing damages. Although, as discussed infra, at 432-435,1 do not accept the dissent’s view of § 901(b), I also do not see how the dissent’s interpretation of Rule 23 follows from that view.[15] I agree with Justice Ginsburg that courts should “avoi[d] immoderate interpretations of the Federal Rules that would trench on state prerogatives,” post, at 439, and should in some instances “interpret] the federal rules to avoid conflict with important state regulatory policies,” post, at 441 (internal quotation marks omitted). But that is not what the dissent *431 has done. Simply because a rule should be read in light of federalism concerns, it does not follow that courts may rewrite the rule.
At bottom, the dissent’s interpretation of Rule 23 seems to be that Rule 23 covers only those cases in which its application would create no Erie problem. The dissent would apply the Rules of Decision Act inquiry under Erie even to cases in which there is a governing federal rule, and thus the Act, by its own terms, does not apply. But “[w]hen a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided Erie choice.” Hanna, 380 U. S., at 471. The question is only whether the Enabling Act is satisfied. Although it reflects a laudable concern to protect “state regulatory policies,” post, at 441 (internal quotation marks omitted), Justice Ginsburg’s approach would, in my view, work an end run around Congress’ system of uniform federal rules, see 28 U. S. C. § 2072, and our decision in Hanna. Federal courts can and should interpret federal rules with sensitivity to “state prerogatives,” post, at 439; but even when “state interests . . . warrant our respectful consideration,” post, at 443, federal courts cannot rewrite the rules. If my dissenting colleagues feel strongly that § 901(b) is substantive and that class certification should be denied, then they should argue within the Enabling Act’s framework. Otherwise, “the Federal Rule applies regardless of contrary state law.” Gasperini, 518 U. S., at 427, n. 7; accord, Hanna, 380 U. S., at 471.

Applying Rule 23 Does Not Violate the Enabling Act

As I have explained, in considering whether to certify a class action such as this one, a federal court must inquire whether doing so would abridge, enlarge, or modify New York’s rights or remedies, and thereby violate the Enabling Act. This inquiry is not always a simple one because “[i]t is difficult to conceive of any rule of procedure that cannot have *432 a significant effect on the outcome of a case,” Wright § 4508, at 232-233, and almost “any rule can be said to have . . . ‘substantive effects/ affecting society’s distribution of risks and rewards,” Ely 724, n. 170. Faced with a federal rule that dictates an answer to a traditionally procedural question and that displaces a state rule, one can often argue that the state rule was really some part of the State’s definition of its rights or remedies.
In my view, however, the bar for finding an Enabling Act problem is a high one. The mere fact that a state law is designed as a procedural rule suggests it reflects a judgment about how state courts ought to operate and not a judgment about the scope of state-created rights and remedies. And for the purposes of operating a federal court system, there are costs involved in attempting to discover the true nature of a state procedural rule and allowing such a rule to operate alongside a federal rule that appears to govern the same question. The mere possibility that a federal rule would alter a state-created right is not sufficient. There must be little doubt.
The text of CPLR § 901(b) expressly and unambiguously applies not only to claims based on New York law but also to claims based on federal law or the law of any other State. And there is no interpretation from New York courts to the contrary. It is therefore hard to see how § 901(b) could be understood as a rule that, though procedural in form, serves the function of defining New York’s rights or remedies. This is all the more apparent because lawsuits under New York law could be joined in federal class actions well before New York passed § 901(b) in 1975, and New York had done nothing to prevent that. It is true, as the dissent points out, that there is a limited amount of legislative history that can be read to suggest that the New York officials who supported § 901(b) wished to create a “limitation” on New York’s “statutory damages.” Post, at 443. But, as Justice Scalia *433 notes, that is not the law that New York adopted.[16] See ante, at 402-403 (opinion of the Court).
The legislative history, moreover, does not clearly describe a judgment that § 901(b) would operate as a limitation on New York’s statutory damages. In evaluating that legislative history, it is necessary to distinguish between procedural rules adopted for some policy reason and seemingly procedural rules that are intimately bound up in the scope of a substantive right or remedy. Although almost every rule is adopted for some reason and has some effect on the outcome of litigation, not every state rule “defines the di *434 mensions of [a] claim itself,” post, at 447. New York clearly-crafted § 901(b) with the intent that only certain lawsuits— those for which there were not statutory penalties — could be joined in class actions in New York courts. That decision reflects a policy judgment about which lawsuits should proceed in New York courts in a class form and which should not. As Justice Ginsburg carefully outlines, see post, at 443-445, § 901(b) was “apparently” adopted in response to fears that the class-action procedure, applied to statutory penalties, would lead to “annihilating punishment of the defendant.” V. Alexander, Practice Commentaries, C901:ll, reprinted in 7B McKinney’s Consolidated Laws of New York Ann., p. 104 (2006) (internal quotation marks omitted); see also Sperry v. Crompton Corp., 8 N. Y. 3d 204, 211, 863 N. E. 2d 1012, 1015 (2007). But statements such as these are not particularly strong evidence that § 901(b) serves to define who can obtain a statutory penalty or that certifying such a class would enlarge New York’s remedy. Any device that makes litigation easier makes it easier for plaintiffs to recover damages.
In addition to the fear of excessive recoveries, some opponents of a broad class-action device “argued that there was no need to permit class actions in order to encourage litigation . . . when statutory penalties . . . provided an aggrieved party with a sufficient economic incentive to pursue a claim.” Id., at 211,863 N. E. 2d, at 1015 (emphasis added). But those opponents may have felt merely that, for any number of reasons, New York courts should not conduct trials in the class format when that format is unnecessary to motivate litigation.[17] Justice Ginsburg asserts that this could not *435 be true because “suits seeking statutory damages are arguably best suited to the class device because individual proof of actual damages is unnecessary.” Post, at 445. But some people believe that class actions are inefficient or at least unfair, insofar as they join together slightly disparate claims or force courts to adjudicate unwieldy lawsuits. It is not for us to dismiss the possibility that New York legislators shared in those beliefs and thus wanted to exclude the class vehicle when it appeared to be unnecessary.
The legislative history of §901 thus reveals a classically procedural calibration of making it easier to litigate claims in New York courts (under any source of law) only when it is necessary to do so, and not making it too easy when the class tool is not required. This is the same sort of calculation that might go into setting filing fees or deadlines for briefs. There is of course a difference of degree between those examples and class certification, but not a difference of kind; the class vehicle may have a greater practical effect on who brings lawsuits than do low filing fees, but that does not transform it into a damages “proscription,” post, at 447, n. 6, 456, or “limitation,” post, at 443, and n. 2, 444, 447, 459.[18]
The difference of degree is relevant to the forum shopping considerations that are part of the Rules of Decision Act or Erie inquiry. If the applicable federal rule did not govern the particular question at issue (or could be fairly read not to do so), then those considerations would matter, for precisely the reasons given by the dissent. See post, at 452-458. *436 But that is not this case. As the Court explained in Hanna, it is an “incorrect assumption that the rule of Erie R. Co. v. Tompkins constitutes the appropriate test of... the applicability of a Federal Rule of Civil Procedure.” 380 U. S., at 469-470. “It is true that both the Enabling Act and the Erie rule say, roughly, that federal courts are to apply state ‘substantive’ law and federal ‘procedural’ law,” but the tests are different and reflect the fact that “they were designed to control very different sorts of decisions.” Id., at 471.
Because Rule 23 governs class certification, the only decision is whether certifying a class in this diversity case would “abridge, enlarge or modify” New York’s substantive rights or remedies. § 2072(b). Although one can argue that class certification would enlarge New York’s “limited” damages remedy, see post, at 443, and n. 2, 444, 447, 459, such arguments rest on extensive speculation about what the New York Legislature had in mind when it created § 901(b). But given that there are two plausible competing narratives, it seems obvious to me that we should respect the plain textual reading of § 901(b), a rule in New York’s procedural code about when to certify class actions brought under any source of law, and respect Congress’ decision that Rule 23 governs class certification in federal courts. In order to displace a federal rule, there must be more than just a possibility that the state rule is different than it appears.
Accordingly, I concur in part and concur in the judgment.

 See also Gasperini v. Center for Humanities, Inc., 518 U. S. 415, 427 (1996); E. Chemerinsky, Federal Jurisdiction § 5.3, p. 327 (5th ed. 2007) (hereinafter Chemerinsky); 17A J. Moore et al., Moore’s Federal Practice § 124.01[1] (3d ed. 2009) (hereinafter Moore).

 The choice in Erie R. Co. v. Tompkins, 304 U. S, 64 (1938), requires that the court consider “the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.” Hanna v. Plumer, 380 U. S. 460, 468 (1965); see also Gasperini, 518 U. S., at 427-428 (describing Erie inquiry).

 See Chemerinsky § 5.3.5, at 321 (observing that courts “have struggled to develop an approach that permits uniform procedural rules to be applied in federal court while still allowing state substantive law to govern”).

 Cf. Milam v. State Farm Mut. Auto. Ins. Co., 972 F. 2d 166, 170 (CA7 1992) (Posner, J.) (holding that “where a state in furtherance of its substantive policy makes it more difficult to prove a particular type of state-law claim, the rule by which it does this, even if denominated a rule of evidence or cast in evidentiary terms, -will be given effect in a diversity suit as an expression of state substantive policy”); Moore § 124.09[2] (listing examples of federal courts that apply state evidentiary rules to diversity suits). Other examples include state-imposed burdens of proof.

 I thus agree with Justice Ginsbubg, post, at 438-442 (dissenting opinion), that a federal rule, like any federal law, must be interpreted in light of many different considerations, including “sensitivity to important state interests,” post, at 442 (internal quotation marks omitted), and “regulatory policies,” post, at 437. See Stewart Organization, Inc. v. Ricoh Corp., 487 U. S. 22, 37-38 (1988) (Scalia, J., dissenting) (“We should assume ... when it is fair to do so, that Congress is just as concerned as we have been to avoid significant differences between state and federal courts in adjudicat *422 ing claims. .. . Thus, in deciding whether a federal. .. Rule of Procedure encompasses a particular issue, a broad reading that would create significant disuniformity between state and federal courts should be avoided if the text permits”). I disagree with Justice Ginsburg, however, about the degree to which the meaning of federal rules may be contorted, absent congressional authorization to do so, to accommodate state policy goals.

 See also Ortiz v. Fibreboard Corp., 527 U. S. 815, 842, 845 (1999) (adopting “limiting construction” of Federal Rule of Civil Procedure 23 that, inter alia, “minimizes potential conflict with the Rules Enabling Act”); Amchem Products, Inc. v. Windsor, 521 U. S. 591, 612-613 (1997) (observing that federal rules “must be interpreted in keeping with the Rules Enabling Act, which instructs that rules of procedure ‘shall not abridge, enlarge or modify any substantive right’ ”).

 This understanding of the Enabling Act has been the subject of substantial academic criticism, and rightfully so. See, e. g., Wright § 4509, at 264, 269-270, 272; Ely, The Irrepressible Myth of Erie, 87 Harv. L. Rev. 693, 719 (1974) (hereinafter Ely); see also R. Fallon, J. Manning, D. Meltzer, & D. Shapiro, Hart and Wechsler’s The Federal Courts and the Federal System 593, n. 6 (6th ed. 2009) (discussing Ely).

 Justice Scalia concedes as much, see ante, at 412-413, but argues that insofar as I allow for the possibility that a federal rule might violate the Enabling Act when it displaces a seemingly procedural state rule, my approach is itself “unfaithful to the statute’s terms,” which cover “substantive rights” but not “procedural rules,” ante, at 413, n. 11 (internal quotation marks omitted). This is not an objection to my interpretation of the Enabling Act — that courts must look to whether a federal rule alters substantive rights in a given case — but simply to the way I would apply it, allowing for the possibility that a state rule that regulates something traditionally considered to be procedural might actually define a substantive right. Justice Scalia's objection, moreover, misses the key point: In some instances, a state rule that appears procedural really is not. A rule about how damages are reviewed on appeal may really be a damages cap. See Gasperini, 518 U. S., at 427. A rule that a plaintiff can bring a claim *425 for only three years may really be a limit on the existence of the right to seek redress. A rule that a claim must be proved beyond a reasonable doubt may really be a definition of the scope of the claim. These are the sorts of rules that one might describe as “procedural,” but they nonetheless define substantive rights. Thus, if a federal rule displaced such a state rule, the federal rule would have altered the State’s “substantive rights.”

 The plurality’s interpretation of the Enabling Act appears to mean that no matter how bound up a state provision is with the State’s own rights or remedies, any contrary federal rule that happens to regulate “the manner and the means by which the litigants’ rights are enforced,” ante, at 407 (internal quotation marks omitted), must govern. There are many ways in which seemingly procedural rules may displace a State’s formulation of its substantive law. For example, statutes of limitations, although in some sense procedural rules, can also be understood as a temporal limitation on legally created rights; if this Court were to promulgate a federal limitations period, federal courts would still, in some instances, be required to apply state limitations periods. Similarly, if the federal rules altered the burden of proof in a case, this could eviscerate a critical aspect — albeit one that deals with how a right is enforced — of a State’s framework of rights and remedies. Or if a federal rule about appellate review displaced a state rule about how damages are reviewed on appeal, the federal rule might be pre-empting a state damages cap. Cf. Gasperini, 518 U. S., at 427.
Justice Scalia responds that some of these federal rules might be invalid under his view of the Enabling Act because they may not “really regulat[e] procedure.” Ante, at 414, n. 13 (internal quotation marks omitted). This response, of course, highlights how empty the plurality’s test really is. See n. 10, infra. The response is also limited to those rules that can be described as “regulatfing]” substance, ante, at 407; it does not address those federal rules that alter the right at issue in the litigation, see Sibbach v. Wilson & Co., 312 U. S. 1, 13-14 (1941), only when they displace particular state laws. Justice Scalia speculates that “Congress may well have accepted” the occasional alteration of substantive rights “as the price of a uniform system of federal procedure.” Ante, at 414, n. 13. Were we forced to speculate about the balance that Con-
*426 gress struck, I might very well agree. But no speculation is necessary because Congress explicitly told us that federal rules “shall not” alter “any” substantive right. § 2072(b).

 It will be rare that a federal rule that is facially valid under 28 U. S. C. §2072 will displace a State’s definition of its own substantive rights. See Wright §4509, at 272 (observing that “unusual cases occasionally might arise in which... because of an unorthodox state rule of law, application of a Civil Rule ... would intrude upon state substantive rights”). Justice Scaxia’s interpretation, moreover, is not much more determinate than mine. Although it avoids courts’ having to evaluate state law, it tasks them with figuring out whether a federal rule is really “procedural.” It is hard to know the answer to that question and especially hard to resolve it without considering the nature and functions of the state law that the federal rule will displace. The plurality’s “‘test’ is no test at all — in a sense, it is little more than the statement that a matter is procedural if, by revelation, it is procedural.” Id., at 264.

The petitioner in Sibbach argued only that federal rules could not validly address subjects involving “important questions of policy,” Supp. Brief for Petitioner, O. T. 1940, No. 28, p. 7; see also Reply to Brief for Respondent, O. T. 1940, No. 28, p. 2 (summarizing that the petitioner argued only that “[t]he right not to be compelled to submit to a physical examination” is “a ‘substantive’ right forbidden by Congress” to be addressed by the Federal Rules of Civil Procedure, “even though in theory the right is not of the character determinative of litigation”). In the petitioner’s own words, “[t]his contention . . . [did] not in itself involve the [applicable] law of Illinois,” ibid., and the petitioner in her briefing referenced the otherwise applicable state law only “to show that [she] was in a position to make the contention,” ibid., that is, to show that the federal court was applying a federal rule and not, under the Rules of Decision Act, applying state law, see id., at 3.

 The plurality defends its view by including a long quote from two paragraphs of Sibbach. Ante, at 409-410. But the quoted passage of Sibbach describes only a facial inquiry into whether federal rules may “deal with” particular subject matter. 312 U. S., at 13. The plurality’s block quote, moreover, omits half of one of the quoted paragraphs, in which the Court explained that the term “substantive rights” in the Enabling Act “certainly embraces such rights” as “rights conferred by law to be protected and enforced,” such as “the right not to be injured in one’s per *428 son by another’s negligence” and “to redress [such] infraction.” Ibid. But whether a federal rule, for example, enlarges the right “to redress [an] infraction” will depend on the state law that it displaces.

 Put another way, even if a federal rule in most cases “really regulates procedure,” Sibbach, 312 U. S., at 14, it does not “really regulatfe] procedure” when it displaces those rare state rules that, although “procedural” in the ordinary sense of the term, operate to define the rights and remedies available in a case. This is so because what is procedural in one context may be substantive in another. See Hanna, 380 U. S., at 471; Guaranty Trust Co. v. York, 326 U. S. 99, 108 (1945).

 Although this Court’s decision in Hanna cited Sibbach, that is of little significance. Hanna did not hold that any seemingly procedural federal rule will always govern, even when it alters a substantive state right; nor, as in Sibbach, was the argument that I now make before the Court. Indeed, in Hanna we cited Sibbach’s statement that the Enabling Act pro *429 hibits federal rules that alter the rights to be adjudicated by the litigants, 312 U. S., at 13-14, for the proposition that “a court, in measuring a Federal Rule against the standards contained in the Enabling Act. . . need not wholly blind itself to the degree to which the Rule makes the character and result of the federal litigation stray from the course it would follow in state courts,” 380 U. S., at 473. And most of our subsequent decisions that have squarely addressed the framework for applying federal rules in diversity cases have not mentioned Sibbach at all but cited only Hanna. See, e. g., Burlington Northern R. Co. v. Woods, 480 U. S. 1, 5 (1987).
Justice Scalia notes that in Mississippi Publishing Corp. v. Murphree, 326 U. S. 438 (1946), we used language that supported his view. See ante, at 407. . But in that case, we contemplated only that the Federal Rule in question might have “incidental effects . . . upon the rights of litigants,” explaining that “[t]he fact that the application of Rule 4(f) will operate to subject petitioner’s rights to adjudication by the district court for northern Mississippi” rather than southern Mississippi “will undoubtedly affect those rights.” 326 U. S., at 445-446. There was no suggestion that by affecting the method of enforcing the rights in that case, the federal rules could plausibly abridge, enlarge, or modify the rights themselves.

 Nor do I see how it follows from the dissent’s premises that a class cannot be certified. The dissent contends that § 901(b) is a damages “limitation,” post, at 443, and n. 2,444, 447, 459, or “proscription,” post, at 447, n. 6, 456, whereas Rule 23 “does not command that a particular remedy be available when a party sues in a representative capacity,” post, at 446, and that consequently both provisions can apply. Yet even if the dissent’s premises were correct, Rule 23 would still control the question whether petitioner may certify a class, and § 901(b) would be relevant only to determine whether petitioner, at the conclusion of a class-action lawsuit, may collect statutory damages.
It may be that if the dissent’s interpretation of § 901(b) were correct, this class could not (or has not) alleged sufficient damages for the federal court to have jurisdiction, see 28 U. S. C. § 1332(d)(6). But that issue was not raised in respondent’s motion to dismiss (from which the case comes to this Court), and it was not squarely presented to the Court. In any event, although the lead plaintiff has “acknowledged that its individual claim” is for less than the required amount in controversy, see 549 F. 3d 137,140 (CA2 2008), we do not know what actual damages the entire class can allege. Thus, even if the Court were to adopt all of the dissent’s premises, I believe the correct disposition would be to vacate and remand for further consideration of whether the required amount in controversy has or can be met.

 In its Erie analysis, the dissent observes that when sovereigns create laws, the enacting legislatures sometimes assume those laws will apply only within their territory. See post, at 453-454. That is a true fact, but it does not do very much work for the dissent’s position. For one thing, as the dissent observes, this Erie analysis is relevant only if there is no conflict between Rule 23 and § 901(b), and the court can thus apply both. Post, at 451. But because, in my view, Rule 23 applies, the only question is whether it would violate the Enabling Act. See Hanna, 380 U. S., at 471. And that inquiry is different from the Rules of Decision Act, or Erie, inquiry. See 380 U. S., at 469-471.
The dissent’s citations, moreover, highlight simply that when interpreting statutes, context matters. Thus, we sometimes presume that laws cover only domestic conduct and sometimes do not, depending upon, inter alia, whether it makes sense in a given situation to assume that “the character of an act as lawful or unlawful must be determined wholly by the law of the [place] where the act is done,” American Banana Co. v. United Fruit Co., 213 U. S. 347, 356 (1909). But in the context of § 901(b), a presumption against extraterritoriality makes little sense. That presumption applies almost only to laws governing what people can or cannot do. Section 901(b), however, is not directed to the conduct of persons but is instead directed to New York courts. Thus, § 901(b) is, by its own terms, not extraterritorial insofar as it states that it governs New York courts. It is possible that the New York Legislature simply did not realize that New York courts hear claims under other sources of law and that other courts hear claims under New York law, and therefore mistakenly believed that they had written a limit on New York remedies. But because New York set up § 901(b) as a general rule about how its courts operate, my strong presumption is to the contrary.

 To be sure, one could imagine the converse story, that a legislature would create statutory penalties but dictate that such penalties apply only when necessary to overcome the costs and inconvenience of filing a lawsuit, and thus are not necessary in a class action. But it is hard to see how that narrative applies to New York, given that New York’s penalty provisions, on their face, apply to all plaintiffs, be they class or individual, and *435 that § 901(b) addresses penalties that are created under any source of state or federal law.

 Justice Ginsburg asserts that class certification in this matter would “transform a $500 case into a $5 million award.” Post, at 436. But in fact, class certification would transform 10,000 $500 cases into one $5 million case. It may be that without class certification, not all of the potential plaintiffs would bring their cases. But that is true of any procedural vehicle; without a lower filing fee, a conveniently located courthouse, easy-to-use federal procedural rules, or many other features of the federal courts, many plaintiffs would not sue.